# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

        Plaintiff,

v.                                     **Case No. 06-CR-64**

**ALAN KLEBIG,**

        Defendant.

## ORDER ON THE DEFENDANT'S REQUESTS FOR AN EVIDENTIARY HEARING

On March 21, 2006, the grand jury returned a two-count indictment against the defendant, Alan Klebig ("Klebig"). The indictment charges Klebig with possession of a fire arm and silencer that were not registered to him in the National Firearms Registration and Transfer Record.

Klebig has filed a motion to suppress the firearms specified in the indictment, which were seized during a search of his residence, located at 1019 Center Street, Watertown, Wisconsin (the "Center Street residence"). In support of his motion, Klebig makes several claims:

    (1) that the warrant authorizing a search of his residence was not based on a showing of probable cause;

    (2) that the affidavit presented in support of the search warrant application contains false statements and omissions;

    (3) that the search warrant lacks particularity;

    (4) that officers unreasonably executed the search warrant; and

(5) that the warrant did not permit officers to seize the firearms set forth in the indictment. As to claims two through five, Klebig requests an evidentiary hearing. The government filed a letter in response to Klebig's hearing request, in which it agrees that a hearing is necessary as to some of the issues raised by Klebig. However, the government objects to Klebig's request for an evidentiary hearing on the issues of particularity and the veracity of the affidavit filed in support of the search warrant application. All four of Klebig's evidentiary hearing requests will now be addressed.

1. **Particularity**

The court can determine whether the particularity requirement is satisfied from a review of information contained within the four corners of the warrant. This is a legal issue for which no evidentiary hearing is required. Accordingly, Klebig's request for a hearing will be denied.

2. **Authorization to Seize the Firearm and Silencer**

The search warrant permitted officers to seize the following items from Klebig's residence: "[a]ny chemicals, containers containing residue of chemicals, any oil and containers containing residue of oil, and anything that could be used to spray chemicals." (Klebig Br. Attach. A.). Because the firearm and silencer specified in the indictment are not listed in the warrant, Klebig says that both must be suppressed unless the government can demonstrate an alternate basis for seizure, such as the plain view exception. He requests an evidentiary hearing to address the government's basis for seizure. The government concurs that an evidentiary hearing is necessary "in the event that the court determines that their seizure was not authorized by the warrant." In terms of what the warrant permitted officers to seize, there is no ambiguity. The officers were authorized to seize chemicals, containers, and sprayers—not guns. Accordingly, the request for an evidentiary hearing as to this issue will be granted.

2

### 3. Unreasonable Execution of the Search Warrant

Klebig contends that officers unreasonably executed the search warrant by searching areas that were unlikely to contain the chemicals, containers, and sprayers specified in the warrant. In support of this position, Klebig says that officers conducted a protective sweep of his residence during which they would have observed a large assortment of different containers of a wide variety of liquids in the garage, shed, and basement. Based on those observations, Klebig says that officers were obligated to focus their efforts on those areas rather than the upstairs bedroom where the firearm and silencer were recovered. Failure to limit their search to the areas where listed items were most likely to be found, Klebig argues, treats the warrant as a "general warrant" rather than a warrant that is limited to a search for chemicals. The government agrees that an evidentiary hearing is needed to address this issue. Accordingly, the request for an evidentiary hearing will be granted.

### 4. False Statements and Omissions: Franks Hearing Request

With respect to his claim that the search warrant application contained false information, Klebig requests a hearing pursuant to Franks v. Delaware, 438 U.S. 158 (1978). To justify a Franks hearing, the defendant must present a "substantial preliminary showing that a false statement made knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and that "the allegedly false statement is necessary to the finding of probable cause." United States v. McClellan, 165 F.3d 535, 545 (citing United States v. Jackson, 103 F.3d 561, 573-74 (7th Cir.1996)). Thus, a defendant is required to make an offer of proof demonstrating that: (1) the affidavit for the search warrant contained a false statement; (2) the statement was made knowingly and intentionally, or that the statement was made with a reckless disregard for the truth;

3

and (3) the false statement was material to the finding of probable cause. Id. at 574; United States v. Merritt, 361 F.3d 1005, 1010 (7th Cir. 2004).

In satisfying the requirements to the degree that an evidentiary hearing is warranted, the defendant's burden is a significant one. He "bears a substantial burden to demonstrate probable falsity" (United States v. Hornick, 815 F.2d 1156, 1158 (7th Cir. 1987)) and must offer direct evidence of the affiant's state of mind or inferential evidence that the affiant had obvious reasons for omitting facts (United States v. McNeese, 901 F.2d 585, 594 (7th Cir. 1990); United States v. Souffront, 338 F.3d 809, 822 (7th Cir. 2003)). If the defendant makes an adequate showing, the court will review the affidavit at issue and determine whether probable cause exists without consideration of the challenged portions. United States v. Muhammad, 928 F.2d 1461, 1464-65 (7th Cir. 1991)(citing United States v. Johnston, 876 F.2d 589, 592 (7th Cir. 1989) and United States v. Balistrieri, 779 F.2d 1191, 1206 (7th Cir.1985)). In all instances, the defendant's "attack must be more than conclusory and must be supported by more than a mere desire to cross-examine" the affiant. United States v. McAllister, 18 F.3d 1412, 1416 (7th Cir. 1994)(citing United States v. Radtke, 799 F.2d at 298, 310 (7th Cir. 1986), quoting Franks, 438 U.S. at 171)).

The court will now discuss whether Klebig has satisfied the three Franks hearing requirements.

**a.     Element 1: False Statements and Omissions**

In support of his claim that falsity requirement is satisfied, Klebig cites the Interoffice Memorandum dated October 14, 2005 authored by Watertown Police Detective Kathy Selck ("Detective Selck"). That Memorandum was incorporated by reference in the affidavit that Detective Selck submitted in support of the search warrant. In the Memorandum, Detective Selck sets forth complaints filed by Doris Gillis ("Gillis"), Klebig's neighbor, from April of 2005 to October of 2005.

4

According to the Memorandum, Gillis believed that Klebig was responsible for damage to her property that resulted from an unknown white powder being dumped on areas of her lawn and lawn mower, and that Klebig sprayed her house with chemicals that ate away the paint and damaged a motion light. (Klebig Br. Attach. C at 15-16.). The Memorandum summarizes officials' investigatory efforts into the complaints of Gillis and others in the area that involved the use of chemical damage to property.

In support of his request for a <u>Franks</u> hearing, Klebig cites two alleged misrepresentations and two alleged material omissions. First, he says that, according to the Memorandum, he was recorded spraying water onto Gillis' property, aiming at her surveillance camera in particular, on October 13, 2005. Klebig contends that the video does not show this. He says that the individual on the video cannot be identified, that there is no indication that the spray is being aimed at the surveillance camera, and that the short spurt of water depicted on the video is so brief that it may be innocuous. (Klebig Br. 9-10.).

Klebig also takes issue with the account of an incident that occurred on July 7, 2005. The Memorandum indicates that, on that date, the assistant building inspector took photographs at Klebig's residence which show that Klebig drove a vehicle from his driveway over the grass and out of Gillis' driveway, leaving an oil spill. (Klebig Br. Attach. C at 16.). Klebig says that the pictures depict only an oil leak, with no visual evidence that Klebig was responsible.

Klebig also says that the Memorandum contains a material omission in the summary of a September 11, 2005 incident—namely, that the substance sprayed across the fence from Klebig's property, and captured on a surveillance camera, was floating in a downward direction away from Gillis' house. Klebig says that the direction of the spray on the surveillance video was omitted from

the Memorandum to allow the misimpression that Klebig was responsible for the damage caused to Gillis' paint and motion light. (Klebig Br. at 9.).

And finally, Klebig contends that Detective Selck interviewed Larry Sokolowski ("Sokolowski") of United Liquid Waste, Klebig's employer, in conjunction with her investigation and that failure to discuss the interview in her affidavit constitutes a material omission. According to Klebig, a report summarizing Detective Selck's interview contains the following information: (1) that Klebig did not use or have access to the powder form of sodium hydroxide, which was believed to be the chemical used to damaged Gillis' property; (2) that United Liquid Waste uses a liquid solution sodium hydroxide buts stores that solution in a 500-gallon drum; (3) that the liquid solution does not contain the high concentration of sodium hydroxide necessary to cause the property damage at issue; and (4) that Sokolowski was surprised that Klebig was a suspect. Klebig says that the report should have been presented with Detective Selck's affidavit to give an accurate and balanced indication of his culpability to the issuing court.

<u>Analysis</u>

With respect to the account of the October 13, 2005 incident, Klebig's claim is unpersuasive. The Memorandum reads, in full, as follows:

> Police were called to Gillis' residence because Klebig was observed to be spraying his garden hose into Gillis property, aimed directly at the surveillance camera in Gillis' attic vent. Gillis said that she saw Klebig spraying the water. The camera shows the water being sprayed and Klebig spraying the water. Detective Brower and Officer Mielke attempted contact however, Klebig would not answer the door.

(Klebig Br. Attach C. at 17.).

The memorandum does not state that the surveillance camera captures Klebig aiming water at Gillis' house as Klebig contends. Gillis made that observation and the surveillance camera, which

6

captured at least some footage of water being sprayed by someone on Klebig's property, confirmed her allegations. Whether the person depicted on the video was Klebig is subject to interpretation and is not necessarily false. Accordingly, with respect to this portion of the Memorandum, Klebig has not satisfied the first Franks hearing requirement.

For similar reasons, the same is true with respect to Klebig's claim that Detective Selck misrepresented the July 7, 2005 incident. The Memorandum reads:

> The building inspector was again at Klebig's residence in which more citations were issued to him for violations. In this incident, Doug Zwieg, Assistant Building Inspector, noted and photographed an oil leak in Klebig's driveway. In the photos, it is visible that Klebig drove a vehicle from his driveway, over the grass area in between his and Gillis' driveway, and out Gillis' driveway, leaving an oil spill.

(Klebig Br. Attach C. at 16.). Klebig says that the photos depict only an oil spill. However, Klebig also notes that Klebig's job is to truck oil for United Liquid Waste. In light of that information, together with observations that might have been made by officers on the scene, such as the direction from which the oil stain trails, the court cannot say that a picture of an oil spill on Gillis' driveway may never be considered visible evidence that Klebig drove his vehicle onto Gillis' property. Again, the pictures would be subject to the interpretation of the investigating officers. What may appear to be an innocuous oil stain to a third party may be characterized as incriminating when considered in context with other evidence, and Klebig has not established a misrepresentation based on this incident record.

The two omissions cited by Klebig—the facts derived from Detective Selck's interview with Sokolowski and the direction of the spray depicted in the September 11, 2005 surveillance video—also fall short of the substantial showing required for a Franks hearing. The materiality of some of the cited information derived during Detective Selck's interview is not apparent. For

7

example, Klebig notes a statement that United Liquid Waste stores its liquid sodium hydroxide in 500-gallon drums. While it might be difficult for Klebig to remove a large container from the premises, that does not mean that Klebig lacked access to the chemical—he could have taken sodium hydroxide from the drum and transported it in a smaller container. The fact that United Liquid Waste has sodium hydroxide on its premises, whatever the potency, might be viewed as a fact that makes it more likely that Klebig committed the offenses under investigation. Moreover, as mentioned earlier, the interview revealed that Klebig trucked oil for United Liquid Waste. An oil stain was observed on Gillis' driveway, and law enforcement officers believed that the oil was the result of Klebig driving onto Gillis' property. Thus, if anything, the information cited by Klebig cuts both ways. It is not so obviously exculpatory that omitting it from Detective Selck's affidavit would be misleading. Officers are not obligated to include every detail of what might be an extensive investigation in their affidavits. The omission here is within what reasonable discretion would allow and does not constitute cause for a Franks hearing.

The other alleged omission cited by Klebig is that the affidavit neglects to state that liquid sprayed recorded on Gillis' surveillance camera was not directed towards her house. While that may or may not be true, Klebig does not dispute that the liquid spray originated from his property and crossed the fence line onto Gillis property. Nor does Klebig dispute that the damage caused to Gillis' siding and motion light was caused by a liquid spray or that the surveillance footage was contemporaneous with the damage. Lack of video evidence depicting the spray actually pointed at the house and causing the damage does not erase the connections and reasonable inferences that can be drawn from the footage. An account of the recording that might not reflect every detail of the footage does not equate to a "material omission" for purposes of a Franks hearing.

8

In fact, in United States v. Maro, 272 F.3d 817 (7th Cir. 2001), the Seventh Circuit rejected a claim similar to the ones asserted by Klebig in support of his position that Detective Selck's Memorandum contained material omissions. The Maro defendant claimed that he was entitled to a Franks hearing because the warrant application excluded the fact that there were conflicting physical descriptions of the suspected bank robber; did not mention the fact that no pictures of the defendant matched surveillance photos; and did not discuss the affiant's inability to confirm the defendant's identity as the bank robber. In rejecting Maro's claim that the foregoing omissions justify a Franks hearing, the court stated that "[t]hese alleged affidavit shortcomings do not come close to the kind of egregious errors necessary to conduct a Franks hearing." Id. at 822. The same can be said here with respect to both of the alleged omissions that Klebig cites.

Thus, for all the reasons discussed, Klebig has failed to demonstrate the first Franks hearing requirement of falsity and his request for a hearing will be denied.

**b.**     **Element 2: Knowing and Intentional Misrepresentation or Reckless Disregard for the Truth**

Even assuming that Klebig could satisfy the falsity requirement, a Franks hearing would not be warranted because Klebig has not satisfied the second element: that Detective Selck acted knowingly, intentionally, or in reckless disregard for the truth. As to that element, Klebig cites no evidence of Detective Selck's intentions. Klebig merely states that the omissions and false statements were made either knowingly, intentionally, or with reckless disregard for the truth. (Klebig Br. at 8.). That allegation is not enough—Klebig must offer direct evidence of the affiant's state of mind or inferential evidence that the affiant had obvious reasons for omitting facts or misrepresenting the truth. United States v. McNeese, 901 F.2d 585, 594 (7th Cir. 1990); United States v. Souffront, 338 F.3d

809, 822 (7th Cir. 2003). While knowledge or recklessness might reasonably be inferred from a blatant contradiction, the inconsistencies here are not so severe and, as mentioned earlier, many depend on interpretations and characterizations of the evidence.

Accordingly, the court need not reach the final <u>Franks</u> hearing element, which requires Klebig to demonstrate that the false statements or omissions were material to probable cause. The court will analyze probable cause in detail when it addresses the facial sufficiency of the warrant, which Klebig has challenged as a separate ground for suppression. At this time, it is sufficient to say that Klebig falls short of the substantial preliminary showing that is required based on the first two elements, and his request for a <u>Franks</u> hearing will be denied.

**IT IS THEREFORE ORDERED** that Klebig's request for an evidentiary hearing is **granted in part** and **denied in part.** The request is **granted** to the extent that Klebig requests an evidentiary hearing to address: (1) whether the government had adequate basis for seizing the firearm and silencer specified in the indictment and (2) whether officers unreasonably executed the search warrant. The court will conduct an evidentiary hearing on **May 16, 2006** at **1:30 p.m..** As to all other issues, the request for an evidentiary hearing is **denied.**

Dated at Milwaukee, Wisconsin this <u>17th</u> day of April, 2006.

s/AARON E. GOODSTEIN
United States Magistrate Judge